[No. 18876. Department One. February 16, 1925.]

D. A. CLARK, *Appellant*, v. WANETA POWER COMPANY, LIMITED, *Respondent*.[1]

RELEASE (5)—OPERATION AND EFFECT—CONSTRUCTION OF AGREEMENT. There was a complete release by a stockholder of his claim for damages through fraudulent representations inducing him to subscribe and pay for the stock, where, with knowledge of the facts on which the charge of fraud was based, he executed a release, on effecting a settlement of the amount claimed by him for wages and by the company for unpaid stock subscriptions, reciting that it was a full settlement and adjustment of all matters and differences between them of every name and nature.

SAME (2)—CONSIDERATION—SUFFICIENCY. The cancelling of an unpaid stock subscription for $8,900 is a sufficient consideration to support a full settlement of all matters in difference between the parties.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered March 13, 1924, upon findings in favor of the defendant, in an action for rescission, tried to the court. Affirmed.

*Danson, Williams, Danson & Lowe,* for appellant.

*Charles E. Swan* and *W. W. Zent,* for respondent.

PARKER, J.—The plaintiff, Clark, seeks rescission of a subscription and purchase by him from the defendant

[1]Reported in 233 Pac. 21.

power company of certain shares of its capital stock, and recovery of the purchase price paid by him therefor, upon the ground of false and fraudulent representations made to him by the defendant as to the quantity and value of the water rights, power sites and lands owned by it; which representations induced him to make the purchase. A trial in the superior court for Spokane county resulted in findings and judgment denying to the plaintiff any recovery, from which he has appealed to this court.

The defendant is a British Columbia corporation, but registered in this state, with its office in Spokane. Its principal business seems to be the development of water power for the generation of electric current upon the Pend O'Reille and Salmon rivers in British Columbia, a short distance north of the north boundary of this state, and ultimately marketing the electric current so generated in British Columbia and this state. In the spring of 1921, the plaintiff subscribed for and agreed to purchase from the defendant 300 shares of its capital stock, agreeing to pay therefor its par value of $100 per share, in all $30,000. Soon thereafter he paid to the defendant on the agreed purchase price $21,100, leaving an unpaid balance of $8,900. Since we agree with the trial court in concluding that the plaintiff cannot recover in this action because of having released the defendant from the claimed obligation for which he here sues, we shall not state our views touching the nature or extent of the claimed false and fraudulent representations and their alleged inducing cause of plaintiff purchasing the stock.

Plaintiff is an experienced sawmill man. Soon after the purchase of the stock by plaintiff in the spring of 1921, the defendant employed him as superintendent for the construction and operation of a sawmill located near one of its proposed power sites on the Salmon

river. He continued in such employment until the fall of 1922, when he claimed a balance, due him for such services, of $6,500. There was then still unpaid on his stock purchase the balance of $8,900. In February, 1923, the plaintiff and defendant agreed upon a settlement of their differences, which he insists did not include a settlement of his claim he here sues upon, and which it insists did include a settlement of his claim he here sues upon, as well as a settlement of all their differences arising out of all matters and transactions theretofore had between them. That settlement is evidenced by a writing executed and signed by both parties, reading, in so far as we need here notice its terms, as follows:

"This Agreement, Made and entered into this 9th day of February A. D. 1923, by and between Waneta Power Company, a corporation, party of the first part, and D. A. Clark, party of the second part, Witnesseth:

"That Whereas party of the second part has subscribed for thirty thousand ($30,000) Dollars worth of stock in the party of the first part company, said stock being of the par or face value of thirty thousand ($30,000) dollars, and,

"Whereas there has been paid to the first party in money and equipment to apply on said stock payment, the sum of twenty-one thousand one hundred ($21,100) dollars, and there is now due to second party from first party for work and labor performed, the sum of Six Thousand Five Hundred ($6,500) Dollars.

"Now in consideration of party of the first part, cancelling the balance of said stock still unpaid for, to-wit: Nine Thousand ($9000) Dollars [$8900], being the face or par value of said stock which was heretofore subscribed for by second party, and in consideration of first party transferring to second party six thousand five hundred ($6,500) dollars of the face or par value of notes, given to first party by persons subscribing for stock in the first party company, and the further consideration of first party issuing to second party the twenty one thousand one hundred ($21,100)

Dollars par value of stock in first party company, this is to be a full settlement and adjustment of all matters and differences of every name and nature existing between the first party and second party growing out of all transactions between them, being distinctly understood that this is a full and final settlement of all matters and transactions of every name and nature between the parties to this agreement.

"It is further understood that the Six Thousand Five Hundred ($6,500) Dollars in face value of the notes to be given by first party to second party is in payment for the labor rendered by second party to first party at their instance and request."

The trial court found, among other things, "that prior to making said settlement and release agreement, the plaintiff had knowledge and was informed as to what water rights, power sites and lands the defendant owned or did not own then and at the time the stock subscription contract was made." This finding, we think, is well supported by the evidence. It may not be of much consequence in our present inquiry, however, except in so far as it negatives the thought of the plaintiff being uninformed as to what his rights were touching the cause of action he here sues upon, prior to the making of the settlement. This fact, of course, cannot be invoked to vary the terms of the written settlement contract, but is worthy of some consideration viewed in connection with the construction of the settlement contract in so far as it might be deemed ambiguous.

It is contended in behalf of the plaintiff that the settlement agreement signed by him and the defendant on February 9, 1923, does not affect a settlement and release of the claim he here sues upon, though it contains the general words "this is in full settlement and adjustment of all matters and differences of every name and nature existing between the first and second parties growing out of all transactions between them."

His counsel invoke what they conceive to be a general rule of construction according to some of the holdings of the courts, as stated in 23 R. C. L. 399, ". . . that, if the release is in general terms, followed by particular recitals, the latter do not control the general language preceding them; while if the particular recitals precede the general words, the release will be restricted to the matters particularly recited." The argument proceeds upon the assumption that there is in this settlement agreement particular recitals as to what is settled and released, followed by the general language of "full settlement and adjustment of all matters and differences" between them. We do not think such is the fair meaning of this settlement agreement. It is true the agreement particularly recites certain things done by the defendant incident to the settlement, but these particular things done by the defendant are plainly stated by the general full settlement language to be the consideration for the full settlement and adjustment of all matters and differences between them. In other words, (1) in consideration of the canceling of the $8,900 of stock, meaning, of course, the canceling of the debt of $8,900 owing from the plaintiff to the defendant as the balance of the purchase price of the stock; (2) in consideration of the transferring by the defendant to the plaintiff of $6,500 of notes in payment of his services; and (3) in consideration of the issuance of the $21,100 of stock without further payment on the balance due on the whole stock purchase, "this is in full settlement and adjustment of all matters and differences of every name and nature existing between the first and second parties growing out of all transactions between them." We think the rule invoked by counsel, conceding that, under some circumstances, it may become of controlling effect as a rule of construction aiding in ascertaining the meaning of ambiguous

language, is of no controlling force in our present inquiry. Reading this settlement agreement in all its parts, in so far as it is applicable to our present inquiry, it seems to us that it clearly evidences an intent to at least settle all matters or differences of every name and nature which could arise between the parties out of the purchase of the $30,000 of stock made by the plaintiff from the defendant in the spring of 1921. Observations in our decision in *Shannon v. Prall*, 115 Wash. 106, 196 Pac. 635, lend support to this conclusion.

Some contention is made in behalf of the plaintiff that the settlement agreement is of no legal effect as a settlement of the plaintiff's claim here sued upon, because of want of consideration for such settlement. We do not overlook the fact that the last above quoted paragraph from the settlement agreement does inform us that the $6,500 of notes was given in payment of plaintiff's claim for services. For present purposes we may regard this as a separation of the consideration in so far as the settlement of plaintiff's claim for services is concerned; but the fact still remains that the defendant canceled plaintiff's indebtedness to it to the amount of $8,900, the balance owing upon the stock purchase. This is of itself of sufficient consideration to support the full settlement agreed to by the plain language of the settlement contract.

We conclude that the plaintiff is not entitled to recover as prayed for, because for a valuable consideration he has entered into a formal agreement with the defendant acknowledging full satisfaction of that claim.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, and MAIN, JJ., concur.